IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JULIANA NWAUWA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 2925 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| ERIC H. HOLDER, JR., Attorney General, U.S. | ) | |
| Department of Justice, ALEJANDRO | ) | |
| MAYORKAS, Director, U.S. Citizenship & | ) | |
| Immigration Services, JANET NAPOLITANO, | ) | |
| Secretary, U.S. Department of Homeland Security, | ) | |
| MARTHA MEDINA MALTES, Field Office | ) | |
| Director, U.S. Citizenship & Immigration Services, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After being denied her application for adjustment of status by the United States Citizenship and Immigration Service ("USCIS"), plaintiff Juliana Nwauwa filed a complaint seeking a declaratory judgment that she is statutorily eligible for adjustment of status, and a judgment that USCIS violated her constitutional right to be notified and heard by failing to timely inform her of its decision denying her adjustment application. Defendants have filed a motion to dismiss for lack of jurisdiction and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1), (6). For the reasons stated below, the court grants defendants' motion and dismisses this case for lack of jurisdiction.

**FACTUAL BACKGROUND**

Plaintiff Juliana Nwauwa is a native and citizen of Nigeria who was lawfully inspected and admitted into the United States pursuant to a B-2, non-immigrant visa on April 30, 2005, in Chicago, Illinois. She was authorized to remain in the United States through October 29, 2005. Subsequently, plaintiff contacted Ms. Vemuri, co-owner of M3 Medical Management, to inquire

about M3 Medical's possible sponsorship on her behalf for an employment-based green card. M3 Medical agreed.

M3 Medical retained attorney Alfonso Bascos for the purpose of preparing a Form I-140 on behalf of plaintiff and assisting plaintiff in her preparation for Form I-485. Mr. Bascos filed M3 Medical's Form I-140 and plaintiff's Form I-485 concurrently in September 2005. Along with her Form I-485, plaintiff also applied for work authorization. Plaintiff began her employment with M3 Medical after she received her work authorization. After her employment began, plaintiff regularly checked with Ms. Vemuri to inquire about the status of the adjudication of her immigration requests. Except for one occasion in May of 2006 when Ms. Vemuri advised that M3 Medical had received a letter from USCIS requesting additional information relative to M3 Medical's Form I-140, Ms. Vemuri consistently told plaintiff that she had not received any news. On March 28, 2007, after hearing nothing from Mr. Bascos or Ms. Vemuri, plaintiff contacted USCIS to inquire about the status of both M3 Medical's Form I-140 and her Form I-485. On April 9, 2007, in response to her telephone inquiry, USCIS told plaintiff that they had denied her application almost three moths earlier on January 11, 2007. It appeared that the denial had been mailed on January 11, 2007, to 7606 Crystal Springs Road, Crystal Lake, Illinois 60012, Ms. Vemuri's home address. This address was listed on Mr. Bascos's Form G-28, Notice of Entry of Appearance, which he filed with USCIS. That same day after learning of the denial, plaintiff resigned from her position with M3 Medical. Apparently, according to USCIS's August 15, 2012, Decision on Application to Adjust Status, once being denied adjustment of status plaintiff automatically lost her work authorization.

After learning about the denial, plaintiff went to great lengths to obtain the January 11, 2007, decision, including hiring an attorney to help her to obtain a copy of the decision and to advise her on what options she might have to remain lawfully in the United States. On July 30, 2007, Loretto Hospital filed a new Form I-140 on plaintiff's behalf. Subsequently, on August 15, 2007, based on the Form I-140 filed by Loretto Hospital and visa availability, plaintiff filed a new Form I-485. One week later, on August 22, 2007, plaintiff received a copy of USCIS's January 11, 2007, decision.

Plaintiff began her employment with Loretto Hospital in November 2007 after she obtained work authorization. On August 13, 2009, plaintiff and her family attended an adjustment of status interview. Two weeks later, on August 27, 2009, USCIS issued a denial of plaintiff's Form I-485 application, citing her ineligibility to receive permanent resident status pursuant to section 245(k) of Immigration and Nationality Act ("INA"), for allegedly failing to maintain lawful status for a period in excess of 180 days. On September 25, 2009, plaintiff timely filed a motion to reopen/reconsider, arguing that in view of the fact that she had not received USCIS's January 11, 2007, decision until August 22, 2007, she had not accrued any unlawful status in that relevant time period, let alone in excess of 180 days. On August 3, 2010, USCIS denied the motion, counting from January 11, 2007, the date of its decision denying plaintiff's first Form I-485, to August 15, 2007, the date plaintiff filed her second Form I-485, for a total amount of 216 days of unlawful status.

On October 29, 2010, with the assistance of her newly retained attorney, plaintiff filed a second motion to reconsider, arguing that USCIS's failure to provide her with its January 11, 2007, written decision denying her Form I-485 demonstrated a procedural error. On May 25,

2011, USCIS denied plaintiff's motion, concluding that plaintiff had not presented sufficient evidence to demonstrate that the untimely filing of her motion was beyond her control.

On June 23, 2011, plaintiff filed a third motion to reconsider based on ineffective assistance of counsel, arguing that she should not be held accountable for the period during which she was unaware of the fact that her first Form I-485 had been denied and that she had presented a claim regarding her previous counsel's misconduct. On March 14, 2012, USCIS denied plaintiff's third motion.

After her third motion was denied, plaintiff filed the instant case on April 20, 2012, claiming that USCIS misapplied the law in view of the fact that her alleged failure to maintain lawful status was through no fault of her own. After plaintiff filed her complaint, because of the receipt of additional information related to plaintiff's eligibility to adjust her status, USCIS reopened her case on June 20, 2012, with an interview for plaintiff scheduled on July 18, 2012.

USCIS agreed with plaintiff that her failure to receive notice about the denial of her initial application between January 11, 2007, and April 9, 2007, was through no fault of her own. On August 15, 2012, however, USCIS again denied plaintiff's adjustment of status application (the "2012 Denial"). USCIS attributed its decision to the following three reasons. First, the aggregation of plaintiff's 128 days of unlawful stay in the United States between April 9, 2007, and August 15, 2007, and her 492 days of unauthorized employment after USCIS's denial of her second application on August 27, 2009, far exceeds 180 days, the limit prescribed under INA § 245(k). Second, plaintiff lied about her employment status with Loretto Hospital during her July 18, 2012, interview, and therefore is inadmissible to the United States under INA § 212(a)(6)(C)(I). Third, the granting of adjustment of status to that of a lawful permanent resident

is a discretionary benefit, and after careful review of all the facts, USCIS has determined that the adverse factors do not warrant a favorable exercise of discretion.

On September 18, 2012, after being notified of USCIS's decision, plaintiff filed her fourth motion to reopen and reconsider. On the same day, before USCIS rendered a decision on plaintiff's fourth motion, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging plaintiff with removability from the United States for remaining longer than permitted under the INA. In response, plaintiff submitted her amended complaint on October 15, 2012. On November 12, 2012, plaintiff's fourth motion to reopen and reconsider was dismissed.

## **DISCUSSION**

In her amended complaint, plaintiff alleged three counts against defendants: (1) violation of the Administrative Procedures Act ("APA"), codified under 5 U.S.C. § 701 *et seq.*, and violation of 8 U.S.C. § 1255(a)/INA § 245(a), and 8 C.F.R. § 245.1 *et seq.*, (2) violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution, (3) attorney's fees and costs under Equal Access to Justice Act.

Under her first count, plaintiff contends that in denying her Form I-485, USCIS egregiously misinterpreted the statutory requirement of the Immigration and Nationality Act ("INA") and the separate regulatory requirement of DHS, and therefore fell within the scope of judicial review under 5 U.S.C. § 706(2)(A). According to Section 232 of Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252(a)(2)(B)(I), however, "[n]otwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review any judgment regarding the granting of relief" under 8 U.S.C. § 1255.  Notably, 8 U.S.C. § 1255

governs "adjustment of status of nonimmigrant to that of a person admitted for permanent residence," the ultimate relief sought by plaintiff.

In her response to defendants' motion to dismiss, plaintiff acknowledges that this court cannot review USCIS's discretionary decision whether to grant adjustment. Plaintiff claims, however, that adjustment of status under INA § 245, 8 U.S.C. § 1255, is a two-step process. The first step is for an alien to prove her statutory eligibility for an adjustment, and the second step is for USCIS to exercise its discretion whether to grant relief. Plaintiff contends that she is asking the court to review only the first step and find that USCIS erroneously determined that she was ineligible for adjustment. Although 8 U.S.C. § 1252(a)(2)(D) does allow judicial review of constitutional claims and questions of law raised upon a petition for review, which are alleged by plaintiff in her second count, the statute explicitly confers such jurisdiction on the "appropriate court of appeals." 8 U.S.C. § 1252(a)(2)(D). Therefore, even if plaintiff is entitled to petition for judicial review of her constitutional and legal claims, the appropriate forum is the court of appeals.

Even if this court has jurisdiction to review the non-discretionary decision made by USCIS with regard to plaintiff's statutory eligibility for adjustment of status, this suit is premature because plaintiff can "obtain review of the [USCIS] district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal (i.e., deportation) proceedings against them." *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000). In *McBreaty*, plaintiffs, winners of a visa lottery operated by the government, sought judicial review of refusal by the district director of the immigration service to adjust their status to that of lawful permanent residents of the United States. *Id.* at 986. Noting that they "could

obtain review of the district director's decision by the Board of Immigration Appeals if and when the immigration service institutes removal . . . proceedings against them," the Seventh Circuit concluded that the case was premature because the plaintiffs failed to exhaust their administrative remedies. *Id*. at 987.

In the instant case, DHS has already issued plaintiff an NTA, charging her with removability from the United States for remaining longer than permitted under the INA. By issuing the NTA, DHS ordered plaintiff to appear before an immigration judge of the United States Department of Justice to show why she should not be removed from the United States. Thus, plaintiff could first renew her application for adjustment of status with the immigration judge. *See* 8 C.F.R. §§ 245.2(a)(5)(ii), (c), 1245.2(a). Should the immigration judge affirm USCIS's decision and order removal of plaintiff, she could then obtain review of the immigration judge's decision by the Board of Immigration Appeals. *See* 8 C.F.R. § 1003.1(b)(1). Therefore, plaintiff has not exhausted her administrative remedies and this case is premature.[1]

In her amended complaint and response to defendants' motion to dismiss, plaintiff argues that even if she had not exhausted all her administrative remedies, the exceptions to the exhaustion requirement apply. As the Seven Circuit stated in *Iddir v. INS*, 301 F.3d 492, 498 (7th

---

[1] Plaintiff's argument that her administrative remedies before USCIS have been exhausted because any further administrative action will take place in a separate agency is without merit. The Ninth Circuit has held that it is immaterial if further review takes place within a different agency. Cabaccang v. U.S. Citizen and Immigration Services, 627 F.3d 1313, 1316-17 (9th Cir. 2010). Kebe v. Napolitano, 2012 WL 1409626 at *3 (S.D. Ind. 2012), upon which plaintiff relies, reaches the same result under slightly different reasoning, concluding that the availability of review within the court of appeals constitutes "an other adequate remedy in a court," preventing review under the Administrative Procedure Act, 5 U.S.C. § 704.

7

Cir. 2002), there are four exceptions under which exhaustion of administrative remedies can be excused:

> (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an "indefinite timeframe for administrative action"; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised.

Plaintiff argues that the second and third exceptions apply because USCIS lacks the ability and competence to resolve the issues presented in this case due to its continual illogical misapplication of law and because USCIS has a clear predisposition against her. Given that USCIS's decisions will be reviewed by an immigration judge and the Board of Immigration Appeals, plaintiff's position has no merit.

Plaintiff also claims that her exhaustion of administrative remedies should be excused because an average of 539 days, with an increasing trend, of languishing for an individual case pending in immigration courts amounts to an administrative proceeding with an indefinite timeframe. This argument has no merit. *McBreaty*, 212 F.3d at 987, requires plaintiff to exhaust her remedies through The Board of Immigration Appeals, and *Iddir*, the case on which plaintiff's argument is based and where the Seventh Circuit found the exception of an indefinite timeframe for administrative action, the government had no idea when the Immigration and Naturalization Service might institute removal proceedings against the appellant. *Iddir*, 301 F.3d at 498. In contrast, here DHS has already instituted the removal proceeding by issuing an NTA that requires plaintiff to appear before an immigration judge on March 18, 2014. Unlike the facts in *Iddir*, there is a definite timeframe, albeit lengthy, for plaintiff's proceeding before an immigration judge.

Plaintiff's contention that her exhaustion of administrative remedies should be excused because substantial constitutional questions are raised is equally without merit. In her amended complaint plaintiff alleges that the denial of her first Form I-485, entered on January 11, 2007, was an erroneous deprivation of her interest in lawful permanent residence. However, as stated by the Seventh Circuit in *Hamdan v. Gonzales*, 425 F.3d 1051, 1601 (7th Cir. 2005), in immigration proceedings a petitioner has "no liberty or property interest" in obtaining adjustment of status, because adjustment of status is a form of discretionary relief. Therefore, in the instant case, plaintiff has no "liberty or property interest" in lawful permanent residence.

Plaintiff also claims that USCIS's denials of her Form I-140 and I-485 violated her due process rights to notice and hearing. Plaintiff's alleged basis for her due process rights is 8 C.F.R. § 103.2(b)(16)(I):

> If the decision will be adverse to the applicant or petitioner and is based on derogatory information considered by the Service and of which the applicant or petitioner is unaware, he/she shall be advised of this fact and offered an opportunity to rebut the information and present information in his/her own behalf before the decision is rendered . . ..

Notably, two elements are required under 8 C.F.R. § 103.2(b)(16)(I) for such a due process right to be conferred upon plaintiff: (1) an adverse decision; (2) that was based on derogatory information of which plaintiff was unaware. Plaintiff challenges only USCIS's January 11, 2007, denial. However, unlike in *Ilyabaev v. Kane*, 847 F. Supp. 2d 1168, 1173 (D. Ari. 2012), plaintiff fails to allege that the decision was based on any information of which she was not aware. Consequently, plaintiff has failed to establish her due process right to notice and hearing.

Even if plaintiff did have a due process right to notice and hearing, it is not disputed that USCIS issued its January 11, 2007, decision to the address listed on plaintiff attorney's G-28 Form, which turned out to be Vemuri's home address. Apparently, plaintiff did not receive this decision. Importantly, in its August 15, 2012, Decision on Application to Adjust Status, the USCIS agreed with plaintiff and did not take into account the days between January 11, 2007, to April 9, 2007, when they computed plaintiff's days of illegal status and engagement in unauthorized employment under 8 U.S.C. § 1255(k)(2). On August 22, 2007, in response to plaintiff's requests, USCIS issued a second copy of the decision. Plaintiff argues that she was not offered an opportunity to be heard about the denial of her first Form I-485. From the undisputed facts, it appears that the reason she was not heard was due to her own choice to file a second Form I-485. She apparently received prompt notice of the denial of her second Form I-485 and was provided with opportunities to be heard, as evidenced by her four motions.

Also, because the decision to grant adjustment of status is within the sole discretion of the Attorney General, a declaration by this court that she is statutorily eligible for adjustment will not affect plaintiff's rights. Indeed, plaintiff is asking this court to enter an advisory opinion regarding her eligibility for adjustment of status. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Plaintiff acknowledges this in her response brief. Therefore this court has no jurisdiction to review USCIS's judgment regarding plaintiff's application for adjustment of status.

## CONCLUSION

For the reasons stated above, this court lacks jurisdiction to adjudicate the issues raised by plaintiff, and dismisses this case without prejudice.

**ENTER:** March 6, 2013

**Robert W. Gettleman**
**United States District Judge**